UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:19-CR-65-TAV-DCP-1 |
| DAMION E. KNOX, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Debra C. Poplin on August 20, 2020 [Doc. 487]. The R&R addresses defendant's Motion for *Franks*[1] Hearing [Doc. 435]. The government responded [Doc. 471], defendant replied [Doc. 480], and Judge Poplin held a telephonic hearing on the motion on August 10, 2020 [Doc. 483]. Judge Poplin then issued the R&R [Doc. 487], recommending that the Court deny defendant's Motion for *Franks* Hearing. Defendant has filed objections to the R&R [Doc. 502], the government has responded [Doc. 511], and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** the defendant's objections, **ACCEPT** the R&R, and **DENY** defendant's Motion for *Franks* Hearing.

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

## I. Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion. Moreover, the Court notes that the parties do not object to the factual basis stated in the magistrate judge's R&R, therefore, the Court will adopt the following facts from the R&R [Doc. 487].

Defendant Damion Knox is charged in the Superseding Indictment with various controlled substances offenses involving heroin and fentanyl, as well as related money laundering and firearm offenses [Doc. 99]. These charges stem from evidence obtained during (1) the execution of a search warrant by the Knoxville Police Department ("KPD") and Drug Enforcement Administration ("DEA") at 800 Washburn Road ("800 Washburn"), in Knoxville, Tennessee; (2) a traffic stop of defendant and codefendant Papa Diop and execution of federal arrest warrants in Detroit, Michigan; and (3) the execution of a search warrant by DEA officers at 5258 Kensington Road ("5258 Kensington") in Detroit, Michigan. All three of these events occurred on April 22, 2019.

Both defendant and codefendant Shadeja Chandler resided at 800 Washburn. The search of that residence uncovered three vacuum sealed bags containing approximately 500 grams of a substance believed to be a heroin/fentanyl mixture, a loaded FN Five seveN handgun, small rubber bands commonly used to band together currency, a loaded Jimenez .380 caliber handgun, a Royal Sovereign brand money counter, a loaded Springfield AR style .233 pistol, a banded quantity of currency, a bottle of inositol powder (a dietary supplement commonly used as a cutting agent for heroin), as well as several gun boxes,

2

including a box for the FN pistol that was previously discovered and a second box for an FN Five seveN 5.7 mm pistol that contained an empty magazine, although the pistol was not found at the residence.

Neither defendant nor codefendant Chandler were present at 800 Washburn during the search, but codefendant Chandler was subsequently arrested on an outstanding warrant and transported to 800 Washburn. She voluntarily waived her *Miranda*[2] rights, and made a statement to KPD Officer Phil Jinks. Officer Jinks' Investigative Report details that:

> **CHANDLER** stated that she was in a relationship with "Fuji" [Defendant Damion Knox] and that he lived in the residence with her. She said that they shared the second bedroom on the left where the drugs were found. She denied any involvement in the conspiracy and said that she did not know that any drugs were in her residence. She agreed that she knew what "Fuji" was involved in. She said that "Fuji" was at the residence when she left that morning, but she understood that he intended to travel to Detroit with an "Uber" driver later in the day. She said that he was going to Detroit to pick up a Cadillac Escalade that he had purchased from a dealership there. She said that she did not know when he was coming back.
>
> . . .
>
> **CHANDLER** stated that she knew that "Fuji" often hid large amounts of money in the attic of their residence. When asked if she thought the money was still there, she stated that it was probably gone. She said that "Fuji" has "trust issues" and would probably have taken the money with him to Detroit. She said that she did not know how much money it was, but estimated that it was at least $80,000. Investigator Wilson and DEA Task Force Officers Standefer and Robbins searched the attic but were unable to locate any money. They did, however, find a clear plastic zippered comforter bag that was open and empty concealed under the insulation near the attic opening. Chandler said that she did not know what he kept the money in, but that she handed him a broom through the open attic access in the past to assist him in hiding the money.
>
> . . .

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> Eventually, **CHANDLER** stated that "Fuji" was en route to 5258 Kensington R[oa]d in East Detroit. She stated that he was in the process of buying that house from his aunt.

[Doc. 436-2, pp. 3–4].

Officer Jinks then contacted DEA Special Agent Scott Smith in Detroit, Michigan, and provided him with the information he received from Chandler, as well as the background of the investigation into the drug conspiracy. DEA investigators established surveillance at 5258 Kensington at approximately 5:00 p.m. and observed a new Cadillac Escalade parked in the driveway of the residence. After approximately thirty (30) minutes, investigators observed two males exit the house, enter the Cadillac Escalade, and begin to drive away from the residence. Investigators observed that the driver of the vehicle matched the description of defendant, and, while in the parking lot of a restaurant, DEA agents executed the arrest warrants on defendant and codefendant Diop, who was the passenger in the vehicle. During the search of defendant's person, "investigators located and seized a loaded magazine for a FN Five seveN handgun from his front pants' pocket," and, while a search of the vehicle "located several cellular telephones and documents, [it] did not locate a large sum of United States Currency or a firearm" [Doc. 436-1 ¶ 15].

Thereafter, an application for a search warrant for 5258 Kensington was prepared, including an affidavit from Special Agent Smith, which was based upon the information provided by Officer Jinks about the investigation of the drug trafficking conspiracy, the search of 800 Washburn, the statements made by Chandler, and the evidence found

4

following the search incident to defendant's arrest. With respect to Chandler, the affidavit states:

> Continuing on April 22, 2019, investigators in Tennessee established a source-of-information (SOI) [Codefendant Chandler], someone who has knowledge of the inner workings of the drug conspiracy. The SOI has not provided information previously to DEA related to this drug conspiracy and did not provide information in hopes of judicial consideration or compensation. This SOI stated KNOX and DIOP departed Tennessee that morning, en route to Detroit, MI in an unknown vehicle. The SOI stated KNOX would typically remove a large amount of drug related United States Currency from KNOX RESIDENCE [800 Washburn] when departing for Detroit, MI. The SOI stated KNOX did not want to leave his money in Tennessee while he was gone. The SOI stated KNOX likely departed on this date with over $80,000. The SOI stated, on this date, KNOX planned to immediately obtain a new Cadillac Escalade upon his arrival in Detroit, MI, and would then travel to the **TARGET LOCATION** [5258 Kensington], and address known to the SOI that KNOX was associated with and utilized when he traveled to Detroit. The SOI stated while KNOX was in Detroit, MI, KNOX would obtain additional quantities of drugs, and then immediately return to Knoxville, TN. SOI was aware of the above details because KNOX told him/her directly.

[*Id.* ¶ 14]. The warrant was then signed by United States Magistrate Judge R. Steven Whalen in the Eastern District of Michigan, and DEA officers executed the search warrant for 5258 Kensington.

In his Motion for *Franks* Hearing, defendant argues that, in early May of 2020, Chandler told him, in a recorded call, that the affidavit in support of the search warrant for 5258 Kensington was incorrect [Doc. 436]. Chandler allegedly stated that she did not tell law enforcement that defendant left with Diop, but, rather, that he left with an Uber driver, and did not mention Diop's name to the KPD [*Id.* at 3]. Chandler also allegedly "stated that she did not mention or inform the police that Mr. Knox would go to Detroit to obtain

5

large quantities of drugs that he would bring back to Knoxville," and she "said she only told the police that [defendant] left with a large amount of money as he was going to 'see about' a new Cadillac and then he would probably be at [5258 Kensington]" [*Id.*]. Further, Chandler stated that she did not mention to law enforcement that defendant informed her directly of this information [*Id.*].

In her R&R, Judge Poplin found that defendant had met his burden of making a substantial showing that the affidavit contained false statements sufficient to warrant a *Franks* hearing [Doc. 487, p. 12]. However, Judge Poplin declined to address the affiant officer's culpability with regard to the allegedly false statements, because, even without the challenged false statements, the affidavit was sufficient to support a finding of probable cause to search 5258 Kensington [*Id.* at 12, 23].

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, the motion for *Franks* hearing, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to those objections, all in light of the applicable law.

## III. Analysis

Defendant raises two objections to the magistrate judge's R&R. Specifically, he objects to (1) the magistrate judge's statement that the Court should afford great deference to the decision of the magistrate judge who issued the search warrant; and (2) the magistrate

6

judge's conclusion that there was sufficient evidence to find probable cause to issue the search warrant for 5258 Kensington, without the allegedly false statements [Doc. 502, pp. 5–6].

### A. Deference

In setting forth the legal standard for determining whether probable cause exists to support a search warrant, the magistrate judge noted that "the issuing judge's determination that probable cause exists is entitled to 'great deference'" [Doc. 487, p. 14 (quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000))]. However, the magistrate judge did not, thereafter, reference deferring to the issuing judge's determination in her analysis of whether sufficient probable cause existed absent the allegedly false statements in the affidavit [*See* Doc. 487].

Defendant faults the magistrate judge for citing this case law, noting that, while a reviewing Court is typically required to give great deference to a warrant issuing magistrate, it does not make sense to do so when a *Franks* motion has been filed and a preliminary showing of falsity has been made [Doc. 502, p. 5]. Instead, defendant contends that the review, in these circumstances, should essentially be *de novo* [*Id.*].

While the Court understands defendant's position with regard to the application of deference in this case, the Court finds no instance of Judge Poplin actually deferring to the warrant issuing magistrate's determination of probable cause in the R&R, and therefore, defendant's objection has no bearing on the outcome of his motion. Reviewing the objected-to quotation in the full context of the R&R makes plain that Judge Poplin was

7

merely citing the normal standard for evaluating probable cause after a warrant has issued. Beyond this quotation of case law, Judge Poplin never again mentions affording any deference to the warrant-issuing magistrate in this case. Instead, as is clear from her analysis of the issue, Judge Poplin took a *de novo* look at the evidence in the affidavit, excluding that evidence that defendant contends is false, and determined that probable cause existed. Because Judge Poplin did not apply any deference to the warrant-issuing magistrate, the Court finds no error in her citation to case law regarding the normal standards for reviewing a challenge to a probable cause finding. Accordingly, defendant's first objection is **OVERRULED**.

### B. Probable Cause

When a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Under *Franks*, the defendant must (1) make a substantial preliminary showing that specified portions of the affiant's statements are deliberately or recklessly false, and (2) demonstrate that the challenged statements are necessary to a finding of probable cause. *Id.* at 171; *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001).

Here, after finding that defendant had met his burden under the first prong of the *Franks* test, Judge Poplin ultimately concluded that, even disregarding the allegedly false

8

statements in the affidavit, there was sufficient information in the affidavit to support a finding of probable cause for the search warrant [Doc. 487, p. 23]. Although Judge Poplin noted that a defendant's "status as a drug dealer" alone is insufficient to support a finding of probable cause to search his residence, she found that the affidavit here did not hinge on the belief that drugs would be found at 5258 Kensington, but, rather, the affidavit states that investigators believed probable cause existed to search 5258 Kensington for currency, firearms, or other indicia of the target offenses [*Id.* at 15–16]. Judge Poplin noted that, during a search of defendant's residence, 800 Washburn, and a search incident to defendant's arrest, law enforcement had found both a loaded and empty magazine for the FN Five seveN handgun, on the same day, without finding the firearm [*Id.* at 17–18]. Moreover, codefendant Chandler had advised that defendant was travelling with $80,000 in cash, previously stored at 800 Washburn, and headed to 5258 Kensington, which provided further evidence of a connection with drug trafficking [*Id.*]. Judge Poplin concluded that this information demonstrated a continuing sequence of events evidencing a connection with illegal drug activity from which it could reasonably be inferred that items related to such activity, including the large sum of currency and a handgun, would be found at 5258 Kensington [*Id.* at 19–20].

Defendant objects that there was not enough evidence to issue the search warrant without the false statements in the affidavit [Doc. 502, p. 6]. Defendant contends that, without the challenged statements, the affidavit merely involves an informant stating that defendant probably left Knoxville with $80,000 to "go see about a Cadillac" and would

9

probably be at 5258 Kensington [*Id.*]. He argues that the magistrate judge should not have placed a large significance on the fact that the loaded magazine from an FN Five seveN handgun was found in defendant's possession when he was arrested [*Id.* at 7]. He notes that none of the cited cases state that, because defendant has ammunition on his person, there is enough evidence for the search warrant of his residence [*Id.*].

The government responds that the affidavit indicated that the 800 Washburn residence was searched earlier that day and law enforcement located a box for a FN Five seveN handgun, and an empty magazine for the FN Five seveN handgun, and upon defendant's arrest, law enforcement found a loaded FN Five seveN magazine, but the FN Five seveN handgun was not located [Doc. 511, pp. 2–3]. The government contends that this evidence was sufficient to support probable cause and the 5258 Kensington residence was exactly the location a reasonable person would expect to find the gun or currency from the two indicted drug traffickers [*Id.* at 3].

The Court first notes that it need not address the first prong of the *Franks* test—whether defendant has made a substantial preliminary showing that specified portions of the affiant's statements are deliberately or recklessly false—because the magistrate judge concluded that defendant had met this burden [Doc. 487, p. 12], and no party has objected to that finding. Accordingly, the Court's analysis is limited to the second prong of the *Franks* test—whether defendant has demonstrated that the challenged statements are necessary to a finding of probable cause.

10

The Court also notes that, in his memorandum in support of his motion for a *Franks* hearing, defendant references paragraphs 14 through 16 of the affidavit as containing false information [Doc. 436, pp. 4–5]. However, defendant's only arguments regarding false statements relate to the affiant's account of the information provided by codefendant Chandler, referred to as the source-of-information ("SOI") [*Id.* at 4–7]. The Court notes that paragraph 15 of the affidavit does not contain any reference to information received from the SOI [Doc. 436-1 ¶ 15]. Instead, that paragraph details information about surveillance of defendant in Detroit and his ultimate arrest [*Id.*]. Moreover, the Court notes that defendant has only challenged certain statements contained in paragraphs 14 and 16. Accordingly, the Court finds that defendant has only properly challenged specific portions of the information contained in paragraphs 14 and 16 of the affidavit. Accordingly, all of the information contained in paragraph 15, as well as the unchallenged portions of paragraphs 14 and 16, are properly considered in determining whether probable cause exists based on the unchallenged statements in the affidavit.

Probable cause consists of "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). To determine probable cause, an issuing judge must examine the totality of the circumstances and find "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (internal quotation marks omitted). When determining whether probable cause exists, the

11

Court must make a "practical, common-sense decision" based on the circumstances described in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

For a search warrant to issue, an affidavit must show a likelihood that (1) the items sought are seizable by virtue of being connected with criminal activity and (2) the items will be found in the place to be searched. *United States v. O'Connor*, 723 F. App'x 302, 307 (6th Cir. 2019) (internal citations omitted). A supporting affidavit must, therefore, sufficiently demonstrate the existence of a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F. 3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

As the magistrate judge noted, the Sixth Circuit has held that "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking," *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008), but "a defendant's status as a drug dealer, standing alone" will not "give[] rise to a fair probability that drugs will be found in his home." *United States v. Frazier*, 423 F.3d 526, 633 (6th Cir. 2005). "Therefore, to meet the probable cause standard, an affidavit must include some facts connecting the residence to drug-dealing activity beyond just the defendant's status as a drug dealer." *United States v. Jenkins*, 743 F. App'x 636, 642 (6th Cir.), *cert denied*, 139 S. Ct. 611 (2018).

Defendant contends that, excluding the challenged statements, the affidavit is left with an SOI informing police that defendant left Knoxville with approximately $80,000 to "go see about a Cadillac," and he would probably be at 5258 Kensington [Doc. 502, p. 6].

12

However, the Court finds that, without the challenged statements, the affidavit still includes the following specific information regarding the defendant:

- Defendant was identified as a leader of a heroin/fentanyl drug trafficking organization that had been linked to several overdose deaths in Eastern Tennessee [Doc. 436-1 ¶ 9].

- On April 16, 2019, a federal grand jury in this district indicted defendant on various heroin and fentanyl drug charges, as well as money laundering charges [*Id*. ¶ 10].

- On April 19, 2019, Judge Poplin signed three (3) search warrants for locations utilized by the drug trafficking organization, including defendant's primary residence at 800 Washburn Street [*Id*. ¶ 12].

- On April 22, 2019, law enforcement executed the search warrant at 800 Washburn and located and seized approximately 675 gross grams of suspected heroin/fentanyl, approximately five (5) firearms, over $2,000 in United States currency, a money counter, heat sealer, scales, a box for an FN Five seveN handgun, and an empty magazine for the FN Five seveN handgun. The FN Five seveN handgun was not located and seized [*Id*. ¶ 13].

- That same day, law enforcement established an SOI, who informed them that defendant left Tennessee that morning, heading to Detroit, Michigan, for purposes of purchasing a new Cadillac Escalade. The SOI informed law enforcement that defendant did not like to leave his money in Tennessee when he travelled, and likely

13

departed with over $80,000. The SOI further informed law enforcement that defendant would likely be at 5258 Kensington [*Id.* ¶ 14].

- Also that same day, law enforcement began surveilling 5258 Kensington, and observed a new model Cadillac Escalade parked in the driveway of the residence. After approximately thirty (30) minutes, two black males exited the residence, entered the Cadillac Escalade, and departed the area. The driver matched the description of defendant. Investigators followed the Escalade to a Popeye's Louisiana Kitchen Restaurant, and, while in the restaurant parking lot, law enforcement took defendant into custody without incident. During a search of defendant's person, law enforcement located and seized a loaded magazine for a FN Five seveN handgun from his front pants' pocket. A search of the vehicle revealed several cellular telephones and documents, but no large sum of United States currency or a firearm [*Id.* ¶ 15].

The affiant indicated that, based on this information, he believed that probable cause existed to search 5258 Kensington for currency, firearms, or other indicia of the target offenses [*Id.* ¶ 16].

At minimum, the information in the affidavit supported probable cause that the FN Five seveN firearm would be located at 5258 Kensington. The affidavit specifically indicated that an empty box for an FN Five seveN firearm, as well as ammunition for the weapon, were located at defendant's primary residence. While this, standing alone, may be insufficient to establish probable cause as to another residence, here, the affidavit

14

indicates that more ammunition for the same, unlocated weapon was found on defendant's person at the time of his arrest, which occurred only a few minutes after defendant was seen leaving 5258 Kensington. At this point in the sequence of events, probable cause existed to search 5258 Kensington for the FN Five seveN firearm. Common sense and experience indicate that an individual engaged in a drug trafficking conspiracy, whose primary residence contains evidence that he owns a firearm that is not present at that residence, and who is then located in another state with ammunition for that same firearm on his person, has likely brought the firearm in question with him in his travels, and left the firearm at the location that he is staying while travelling. *See United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (stating that, in determining probable cause, courts may rely on "common-sense conclusions about human behavior" (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 587 (2018))).

Although defendant argues that the magistrate judge placed too much emphasis on the firearm, and cites no case law indicating that ammunition on a person is sufficient to establish probable cause for a search of that person's residence, the Court finds that this argument oversimplifies and downplays the entire factual background contained in the affidavit. Here, the affidavit indicates that defendant was a known drug-dealer [Doc. 436-1 ¶ 9], drug dealers are often known to carry firearms to protect their business [*Id*. ¶ 7(e)], an FN Five seveN firearm had previously been at defendant's primary residence, but was no longer located there [*Id*. ¶ 13], and defendant had ammunition for the same firearm on his person immediately after departing 5258 Kensington [*Id*. ¶ 15]. In light of all of these

15

facts, there was a reasonable likelihood that the FN Five seveN would be located at 5258 Kensington. Accordingly, probable cause existed to search 5258 Kensington for the FN Five seveN firearm, even absent the allegedly false statements in the affidavit.

Because probable cause existed even without the allegedly false statements, no *Franks* hearing is necessary.[3] Accordingly, defendant's objection to the magistrate judge's conclusion that probable cause supported the search warrant for 5258 Kensington, absent the allegedly false statements, is **OVERRULED**.

## IV. Conclusion

Accordingly, upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Thus, defendant's objections [Doc. 502] are **OVERRULED**. The Court **ACCEPTS in whole** the R&R [Doc. 487] and incorporates it into this Memorandum Opinion and Order. The Court hereby **DENIES** defendant's Motion for *Franks* Hearing [Doc. 435].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that the magistrate judge also found that there was sufficient probable cause to search 5258 Kensington based on codefendant Chandler's information about the $80,000 [Doc. 487, p. 21]. Defendant has objected to that conclusion [Doc. 507, pp. 7–8]. Based on the Court's determination that there was sufficient probable cause to search 5258 Kensington for the FN Five seveN firearm, the Court need not address whether there was sufficient probable cause, separately, to search for the U.S. currency.